Judge Schroeder, may it please the Court, my name is Henry Hsu and I represent the Petitioner-Appellant David Grecu, that's how I pronounce your name. Thank you. As the Court knows from the Certificate of Appealability, we're here to address the issue of whether statutory tolling or equitable tolling under AEDPA applies to Mr. Grecu's petition. And as developed in the record below, there are two timeliness issues, if you will. The first one is what I'll call the gap in filing between the Superior Court habeas petition and a Sixth District, Appellate District habeas petition. And then the other timeliness issue is the admittedly late filing of the federal petition by anywhere between seven and 14 days or so. On the gap, as we've indicated, Your Honor, you know, the issue is whether the delay was unreasonable and whether it was, if it was unreasonable, the issue of unreasonableness goes to whether the delay was justified or explained. And in this case, Mr. Grecu tried to explain, tried to justify his delay in the gap, although the district court had already ruled, had already entered judgment against him, and treated his request for, to be considered on the explanation of the delay as a motion for reconsideration. As we indicated in our brief, we believe that's error under this Court's precedent at Herbst v. Cook, where the Court said that, you know, you have to give a petitioner the notice and opportunity to address an issue of timeliness before the adverse judicial action is entered against him. Did the order of the district court, Mr. Hsu, specifically say, in asking for a motion to dismiss, that there should be addressed the validity of the habeas petitions, plural? There were three filed, one in the State trial court, one in the State court of appeal, and one in the Supreme Court. Why didn't that give notice to the parties that each and every petition should be examined as to timeliness? I'm sure, Judge Beyer, that that was the expectation. Now, in Herbst. Yes. That was a pro se case. Correct. This gentleman was counseled by Coonhaven. No, Your Honor, not in a district court. He was not. Well, no, no, but he was counseled in the State court. He was counseled in the superior court petition, but not in the subsequent petitions to the Sixth Appellate District or the Supreme Court. Are you telling me that Mr. Coonhaven was not his lawyer for purposes of filing in the Federal district court? He was not. I'll get to that point, Your Honor, but. That's not exactly what Mr. Greco in his affidavit under oath says. He says, on November 1, 2006, I sent my lawyer my Northern District petition. And then later he says, I immediately contacted my lawyer and asked him to file my Northern District habeas petition as soon as the Supreme Court decision decides or denies my then pending petition. And line 16, my counsel assured me, quote, I can certainly file a petition for you. My lawyer further said I have signed up to receive mail, e-mail notification at line 26. My lawyer told me that he filed my U.S. Northern District court habeas petition. He didn't have a lawyer? He did not, Your Honor, and the reason I. How can you? What facts in the record, Mr. Sue, are you relying upon for your assertion that he was without a lawyer? The facts, Your Honor, would be the correspondence from Mr. Cohenhoven to Mr. Greco in connection with that petition. Which were entitled at the top, Attorney-Client Privileged Communication. Yes. So Mr. Cohenhoven thought he was a lawyer because he was using the attorney-client privilege as a headline, right? And guess who else thought he was a lawyer? Your client. Your Honor, my response would be that if you, if one looks at the context of the letters, it was clear that Mr. Cohenhoven was doing Mr. Greco a favor by looking at the petition really quickly. He said he wasn't going to redo the exhibits or retype anything. Did he say that he wouldn't mail it? And he mailed it in. And he didn't put his name on it. Wait. Yes. He mailed it in, but he was not counsel of record on the complaint. He merely did Mr. Greco a favor by mailing it in. And that's how I would interpret the record, Your Honor. And the petition in the Federal District Court was prepared and signed by your client before he went into administrative segregation and was completely similar to that which he had filed in the State Superior, pardon me, Supreme Court, correct? That's correct. Not a jot and tittle difference, except for the heading, of course. That would be my understanding, Your Honor. Yes. All right. But I would submit that that goes to show Mr. Greco's diligence in preparing the Federal petition for filing. Well, let me ask you this. What about administrative segregation caused any delay in filing the document? On the one hand, it was prepared and signed before Mr. Greco went into administrative segregation and was delivered to Mr. Conehaven for filing, right? That's correct. On the other hand, Mr. Conehaven was not in administrative segregation. Yes. So what about administrative segregation was the proximate cause of any delay? Well ---- And tell me where in the record there are any facts which so allege. Well, the what-if scenario here would be. Well, not what-if. What facts are in the record which show a causative relation between administrative segregation of Mr. Greco, which starts after the petition has been signed and sent? Yes. The causative fact is as soon as Mr. Greco indicates in his declaration that as soon as he found himself in administrative segregation, he contacted Mr. Conehaven and asked him, will you file this for me? Right. And Mr. Conehaven says, okay, but let's wait until the California Supreme Court rules. That was good advice because you couldn't file it before because you hadn't exhausted under EDPA, right? Yes. What facts? I mean, we have some cases where administrative segregation prevents the inmate from seeing his file or working his papers so that he can put together a petition and that perhaps tolls the time under equitable tolling on which he should file. All right. But here we have the case, the facts, which are stubborn things and sometimes inconvenient, that the petition was filed, was prepared before you went to administrative segregation. It was mailed to the attorney. The attorney said he would file it as soon as he heard from the California Supreme Court denying. There was no problem in Mr. Greco communicating with Mr. Conehaven, right, about that. So what facts are alleged in the record, I mean, proven in the record, to show that there was any basis for equitable tolling? The facts, Your Honor, would be that as soon as he got into administrative segregation, Mr. Greco had no way of controlling the timing of the filing of the petition or even knowing when the California Supreme Court was going to rule. But he had his own lawyer in possession of the petition. It was the lawyer who failed him. It wasn't segregation which caused him not to file. And as I indicated in our brief, Your Honor, we believe that that's the situation is more like Stillman v. Lamarck, where there was a promise from the prison official to return a signed petition to the lawyer so that it could be filed. And the prison official didn't do it. Yes. See, this is a very odd situation. Yes. Because he sent it to a lawyer, so he did what he should have done. And the lawyer didn't do what he should have done quite timely. And he says what in the record in the district court indicates whether he was being represented by that lawyer or not? Just the, you know, I rely on the docket entries, which are part of the excerpts of a record which show that, you know, Mr. Cohenhoven was not at all present. He was all pro se. And just to sum up really quickly, I know I'm out of time, Your Honor. I would just say that, you know, under Holland v. Florida, the Supreme Court has admonished the lower courts that, you know, to eschew application of rigid mechanical rules. The Court is being a court of equity here, and we have to take these unusual situations as they come up. Okay. Unless the Court has any other questions, I'll stand down. Thank you. Good morning. Jill Thayer on behalf of Respondent. Yeah. This case is really an equitable tolling case. There's not any questions about the statute. There was no statutory tolling that the time between September 2nd, 2005, when the trial court in the State ruled against the Petitioner, and six months later, he hadn't filed, and then he did file. Are you abandoning that? No. No, I am not abandoning that claim. The issue is, in that situation is, you've got the gap tolling, the statutory tolling, which he's not entitled to. But then he responds. His response to that is, and the way we see it is, is he entitled to equitable tolling for failing to file his brief timely in the California Court of Appeal? Are you abandoning the position of the district court in this case that gap tolling under California law, this six-month delay was unreasonable as a matter of law? Are you abandoning that? No. No. I agree that there is this the gap tolling is also an issue, that either four- or six-month gap tolling, that's another reason that this court could. We recently held that 91 days was not reasonable. Right. Yes. And so it is not reasonable. But then his argument is, but then I'm, it's justified, right? And so that then becomes an equitable-type issue. So, yes, the 110 or 192 days. Excuse me. If you win on gap tolling, we don't get to equitable tolling, do we? Well, I do feel the need to address. That's why I ask you whether you're abandoning it. I do feel the need to address the equitable issues. He's saying I was unable to do it. His argument is he gets more than gap tolling because of equitable tolling. Correct. So, therefore, it is an equitable tolling. So it ends up being an equitable tolling issue. I think we can agree the gap is too long. So then his response is, I'm entitled to equitable tolling during that gap and the 20-day gap. But does he claim that he was in administrative segregation from September 2nd, let's say the next six months? Yes. Yes. And the reason he was in administrative segregation is because he was threatening force or violence. And so our position on that gap tolling period is that you are not entitled to equitable tolling if you are the reason you are in administrative segregation. Do you have any authority for that proposition? Well, in Espinoza, which is cited in the briefs, this Court agreed equitable tolling applied, and they did say, this Court did say, well, it was at footnote 7, but they said that we are very concerned that the fact he was in administrative segregation is because he was in administrative segregation for his own protection. So that was the Espinoza case. Now, in this Court, it needs to be, the circumstances need to be beyond the prisoner's control or beyond the Petitioner's control. That's what this Court has said in, well, in all their. The amount of time that he spends in Ad Seg is not under his control, is it? But the reason he's in Ad Seg is. It's just the amount of time that he's there. So whether he's, if he's there six months or four months or the whole time. But I think. There's indecision, isn't there? I think in looking at equity, this Court can look at, well, why are you in administrative segregation? Oh, you flooded your cells, and, oh, you're threatening force and violence, as opposed to you're in administrative segregation for some reason beyond your control. I think it's reasonable for this Court to consider what's in equity to consider why are you in administrative segregation. And it's our position that he's not entitled, that's not justification, is when you're in administrative segregation for your own conduct. That's just a different situation. It needs to be a situation that's beyond your control. You need to reach that? No. If you're going to look at the 20-day and the 7-day, you know, I know there's, basically, the other issue is that short little period and at the very end. And, yes, he gave it to his attorney. And I would say the difference between this case and the Stillman v. Lamarck case is in Stillman v. Lamarck, it was the prison officials' misconduct that caused it to be late. And the Supreme Court and this Court has made a distinction between when it's up to the prison officials and they may have a reason to delay and they have no interest perhaps in doing what they need to do in a timely fashion versus when the person is represented by an attorney. And I think in this case you can't have it both ways. You can't be represented by an attorney but not represented by an attorney. You kind of either are or you aren't. Did any attorney ever make appearances of record in this case, in the State proceedings? Yes. In Superior Court. Mr. Conehaven. Yes. Conehaven. He actually filed the initial Superior Court petition. Yes, later. And then he was represented by a different attorney at that hearing, the hearing in which the Superior Court denied the petition. Conehaven was present at that hearing. Well, I believe he was represented by a different attorney. He asked, Mr. Greco asked to have Conehaven represent him in the Superior Court and the Superior Court assigned a different attorney. I forget his name but it's in the record that a different attorney represented him at that point. But so Mr. Conehaven had been aware of this case and had been following it along and Petitioner got along with him during that whole period. But those critical days at the end, it just didn't get filed on time and it wasn't, it was, we would say under Holland, this was a garden variety claim of attorney neglect. And part of the reason he was late is because it was such a short amount of time. It was the seven days. But then one day is as good as seven days is as good as 30 days. So in other words, you're late, if you're late, you're late. You don't get a break just because you're seven days late. Even if you get it to a lawyer on time. Well, and he is your lawyer and it's not the prison officials, it's the lawyer. And if he's saying he's Make a difference whether he's his lawyer or whether he just sent it to him as a favor? Yes. I think this halfway thing doesn't do you any good. You can't have it, you have to pick one way or the other. And he sent it to an attorney and the attorney didn't file it. I don't think you answered Judge Schroeder's question. Does it make any difference whether, and I don't say there are any facts which show this, that Mr. Cohen-Hyland was acting as lawyer for Mr. Greco or as friend? No. No. All right. Unless you have any further questions, I'll submit. Okay. Any further questions? Thank you. What is that, four seconds left? Would you wish to add anything? You have four seconds left? You don't have to. Okay. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Ripple, Bea